**In re AIR CRASH DISASTER NEAR WARSAW, POLAND, ON MAY 9, 1987.**

**THIS ORDER RELATES TO Filus 87 C 4252.**

**No. MDL 787.**
**No. 87 C 4252.**

United States District Court, E.D. New York.

June 26, 1989.

See also 707 F.Supp. 650.

Kreindler & Kreindler (Milton G. Sincoff and Lori B. Lasson, of counsel), New York City, for plaintiff.

Wolf Popper Ross Wolf & Jones (John Mage and Michael P. Fuchs, of counsel), New York City, for defendant Union of Soviet Socialist Republics.

Condon & Forsyth (Desmond T. Barry, of counsel), New York City, for defendant LOT Polish Airlines.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiff brought this action against LOT Polish Airlines (LOT) and the Union of Soviet Socialist Republics by its agencies or instrumentalities (the Soviet defendant). Plaintiff sues as administratrix of the estates of her husband and of her daughter, both of whom died in the crash of a jet plane operated by LOT and manufactured and sold to it by the Soviet defendant.

The crash occurred on May 9, 1987 soon after the aircraft took off from Warsaw, Poland for a flight to Kennedy Airport, New York. According to plaintiff, both passengers purchased round-trip tickets in the United States from LOT or its agent and were returning to New York.

The complaint says that two of the aircraft's engines failed, causing a fire that led to the crash, and that LOT was negligent and committed willful misconduct in the operation, maintenance, and repair of the engines.

Plaintiff claims that the Soviet defendant sold the aircraft to LOT (presumably in Poland or the Union of Soviet Socialist Republics) along with manuals and instruc-

tions for operating, servicing, and overhauling the engines; that the Soviet defendant was negligent in the design, manufacture, assembly, inspection, and servicing of the aircraft and its engines; and that it negligently gave inadequate warnings and instructions for safe operation, maintenance, repair, inspection, and overhaul to LOT and failed to warn LOT and plaintiff's decedents that the aircraft and its engines were defective and unairworthy.

The complaint invoked the court's jurisdiction under 28 U.S.C. § 1330(a), which provides, in pertinent part, that federal district courts shall have jurisdiction of a nonjury civil action against "a foreign state," as defined in 28 U.S.C. § 1603(a), "as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity" under 28 U.S.C. §§ 1605–1607 or under an international agreement.

After plaintiff moved for the entry of a default judgment against the Soviet defendant, and it in turn moved to dismiss the case because the court had no subject matter jurisdiction under 28 U.S.C. § 1330(a), plaintiff served interrogatories relating to the motion to dismiss. The defendant objected, and this court referred the matter to Magistrate John L. Caden for a decision. The Magistrate overruled the objections.

The court has before it the appeal from the magistrate's order. The Soviet defendant urges that this court has no subject matter jurisdiction under 28 U.S.C. § 1330.

That section was added as a part of the Foreign Sovereign Immunities Act of 1976 (the Act), the other parts of which are codified at 28 U.S.C. §§ 1602–1611. The Act was adopted in response to a concern that there were no comprehensive statutory provisions to inform parties when they could sue on a legal claim against a foreign state and no firm standards as to when a foreign state might validly assert the defense of foreign immunity. H.Rep. No. 1487, 94th Congress, 2d Session, 7 (1976), *reprinted in* 1976 U.S.Code Cong. & Admin.News, at 6604, 6605 (herein House Report). Prior to adoption of the Act the ultimate determination of whether to rec-

ognize foreign sovereign immunity in court rested with the Department of State. *Id.* at 8–9. *See also Ex Parte Peru,* 318 U.S. 578, 63 S.Ct. 793, 87 L.Ed. 1014 (1943); *Republic of Mexico v. Hoffman,* 324 U.S. 30, 65 S.Ct. 530, 89 L.Ed. 729 (1945). As a result, a private claimant against a foreign state faced considerable uncertainty as to whether the claim would be decided "on the basis of nonlegal considerations through the foreign government's intervention with the Department of State." House Report, *supra,* at 9, U.S.Code Cong. & Admin. News 1976, p. 6607.

In the Act Congress set standards and left sovereign immunity decisions pursuant to those standards exclusively to the courts, thereby discontinuing the practice of judicial deference to "suggestions of immunity" from the Department of State. *Id.,* at 12.

Congress accomplished its purpose by specifying the categories of cases in which a foreign state (defined in 28 U.S.C. § 1603 to include its agents and instrumentalities) might be sued. The Act provides in 28 U.S.C. § 1604 that a foreign state "shall be immune from the jurisdiction" of the courts, federal and state, except in the classes of cases spelled out in 28 U.S.C. §§ 1605 to 1607. For purposes of the present case the two pertinent categories are set forth in 28 U.S.C. § 1605(a)(2). So far as relevant that subsection provides:

> (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—
>
> .     .     .     .     .
>
> (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere....

The court assumes without deciding that the Soviet defendant and its instrumentalities constitute a "foreign state" as defined in 28 U.S.C. § 1603 and considers the application of § 1605(a)(2).

Plaintiff argues that this case falls into both of the two separate and self-contained categories described in § 1605(a)(2).

■ Plaintiff says the action comes within the first clause as an "action" "based upon a commercial activity carried on in the United States." The "activity" to which plaintiff points consists of regular flights of the Soviet airline Aeroflot to and from Moscow and the United States, Aeroflot's maintenance of an office here, and an advertisement in the Wall Street Journal by Aviaexport USSR reciting that it supplies aircraft and engines and other equipment for such aircraft and for servicing and repair of aircraft.

No doubt Aeroflot's regular operation of its business here is "commercial activity carried on in the United States" within the meaning of the first clause of 28 U.S.C. § 1605(a)(2). Presumably such activities would be enough to show that a defendant was doing sufficient "business" to satisfy due process and subject the defendant's person to the jurisdiction of the court even in an action raising claims that do not arise from those activities. But in the first clause of § 1605(a)(2) Congress did not exercise its full constitutional power and grant this court subject matter jurisdiction over every case against a foreign state over which personal jurisdiction could be obtained. The clause restricted subject matter jurisdiction to an "action based upon" the commercial activity.

This action is not "based upon" the Soviet defendant's activity in the United States. The business conducted by Aeroflot here and the placing of an advertisement in the Wall Street Journal have no connection to the Soviet defendant's alleged negligence said to have caused the crash. Plaintiff's decedents had no dealings or contact with Aeroflot's business or with the advertisement. The negligent acts outside the United States were not an "integral part" of Aeroflot's business here or of the advertisement. There is no "nexus" between the cause of action asserted by plaintiff and the commercial "activity" here. *See Barkanic v. CAAC*, 822 F.2d 11, 13 (2d Cir.), *cert. denied*, — U.S. ——, 108 S.Ct. 453,

98 L.Ed.2d 393 (1987); *Harris v. VAO Intourist Moscow*, 481 F.Supp. 1056, 1060–61 (E.D.N.Y.1979); *Castillo v. Shipping Corp. of India*, 606 F.Supp. 497 (S.D.N.Y. 1985). The first clause of 28 U.S.C. § 1605(a)(2) is therefore inapplicable.

■ Plaintiff also urges that the second clause of 28 U.S.C. § 1605(a)(2) applies, claiming that the action is "based" "upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere." Plaintiff contends that the "act" performed here by the Soviet defendant was its "failure to warn" LOT and plaintiff's decedents that the aircraft and its engines were defective and unairworthy.

Although, as noted above, Congress did not in the Act exercise its full constitutional power to give federal district courts subject matter jurisdiction over any case where personal jurisdiction could be obtained, Congress did make subject matter jurisdiction dependant on factors usually relevant to personal jurisdiction. House Report, *supra*, at 13–14. The House Report states that the "immunity provisions" in the Act "prescribe the necessary contacts which must exist before our courts can exercise personal jurisdiction." *Id.* Indeed, the language used by Congress ·was "patterned after the long-arm statute Congress enacted for the District of Columbia." House Report, *supra*, at 13, U.S. Code Cong. & Admin.News 1976, p. 6612. Congress thus assumed that each of the activities upon which a claim must be "based" under § 1605(a)(2) would itself be enough to subject a defendant to personal jurisdiction.

By making in the second clause of § 1605(a)(2) the "act" performed here in connection with commercial activity elsewhere the "act" upon which the claim must be "based," Congress intended that the word "act" be interpreted in the same sense as it has in determining personal jurisdiction. Therefore, decisions determining whether a "failure to warn" is itself a sufficient basis for long-arm jurisdiction are pertinent in deciding whether Congress intended a mere "failure to warn" to be

considered an "act" on which a withholding of sovereign immunity should be based.

The House Report makes clear that the claim must "arise" from a "specific act" performed in the United States and adds:

it should be noted that the acts (or omissions) encompassed in this category are limited to those which in and of themselves are sufficient to form the basis of a cause of action.

House Report, *supra,* at 19, U.S.Code Cong. & Admin.News 1976, p. 6618. An example the House Report gives of the kind of "act" contemplated is "an act in the United States that violates U.S. securities laws or regulations." *Id.*

While the House Report adverts to "omissions," the reference is plainly to omissions in connection with the type of "act" such as one "that violates U.S. securities laws or regulations." Several such laws and regulations make it a fraud to omit to state a material fact necessary to make statements made, under the circumstances, not misleading. *See, e.g.,* Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10(b)–5 of the Rules of the Securities and Exchange Commission.

Thus, the "omissions" mentioned in the House Report should in fairness be taken to mean omissions in connection with some specific "act" to which the second clause of § 1605(a)(2) refers. There is no such "act" in this case.

The court in *Four Corners Helicopters, Inc. v. Turbomeca, S.A.,* 677 F.Supp. 1096, 1099 (D.Colo.1988), reached a similar conclusion, holding that a failure to warn was insufficient to give the court subject matter jurisdiction under the Act over a foreign manufacturer of an aircraft that crashed in the United States, albeit the court did not articulate its reasons for so holding.

Moreover, it is hard to see how a failure to act can be deemed an "act." Certainly mere failure to warn by a defendant does not "furnish the minimum contact" needed to confer jurisdiction. Several courts have so held. *Chlebda v. H.E. Fortna & Bro., Inc.,* 609 F.2d 1022, 1023–24 (1st Cir.1979); *Carty v. Beech Aircraft Corp.,* 679 F.2d 1051, 1060–65 (3d Cir.1982) (involving Virgin Islands statute giving personal jurisdiction over a person "causing tortious injury by an act or omission in this territory"). Since the Act makes the mere performance of a single "act" performed here the act on which the claim must be based, these cases are persuasive authority for reading the second clause of § 1602(a)(2) to require an "act" and not merely a failure to warn.

This court decides that the Soviet defendant is immune from the jurisdiction of this court. To the extent that *Bland v. Union of Soviet Socialist Republics,* 17 Av.Cas. (CCH) 17, 430 (E.D.N.Y.1982), and *Gayda v. Union of Soviet Socialist Republics,* 10 Av.Cas. (CCH) 17, 634 (E.D.N.Y.1987), are inconsistent the court respectfully declines to follow them.

The complaint against the Soviet defendant is dismissed.

Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure the court directs the entry of a final judgment dismissing the complaint as to the Soviet defendant; the court determines that there is no just reason for delay.

So ordered.